1  Andrew G. Ogden (CA Bar # 112384)
2  P.O. Box 3673
   Boulder, CO 80307-3673
3  Tel:  (303) 818-9422
4  aogden@indra.com

5  Sean Malone (OR Bar # 084060) *Pro Hac Vice Application Pending*
   259 E.5th Ave, Ste. 200-G
6  Eugene, OR 97401
   Tel: (303) 859-0403
7  Fax: (650) 471-7366
8  seanmalone8@hotmail.com

9  Attorneys for Plaintiff

10

11                 IN THE UNITED STATES DISTRICT COURT

12              FOR THE EASTERN DISTRICT OF CALIFORNIA

13

14 | Conservation Congress, a non-profit organization, | ) ) | Case No. _____ |

15 | Plaintiff, | ) ) ) | **Complaint for Declaratory and Injunctive Relief** |

16 | vs. | ) ) | |

17 | United States Forest Service and United States Fish and Wildlife Service, | ) ) ) ) | (National Environmental Policy Act, 42 U.S.C.§§ 4321 *et seq*; National Forest Management Act, 16 U.S.C. §§ 1601, *et seq*., Administrative Procedure Act, 5 U.S.C. §§ 701 *et seq*.; Endangered Species Act, 16 U.S.C. §§ 1531 *et seq*.) |

18 | Defendants. | ) ) ) ) ) ) ) ) ) ) | |

19

20

21

22

23

24

25

26

27

28

COMPLAINT                                                          1

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## STATEMENT OF THE CASE

1.     Plaintiff Conservation Congress is challenging the decision of Defendant United States Forest Service (USFS) to authorize the Lava Hazardous Fuels Reduction Project (Lava Project) as described in the Environmental Assessment dated August, 2015 (EA) and the Decision Notice and Finding of No Significant Impact dated January 19, 2016 (DN/FONSI) in the Modoc NF (Modoc NF).

2.     The analysis and determinations of the EA and the DN/FONSI are arbitrary and capricious under the Administrative Procedures Act (APA), 5 U.S.C. §§ 701 *et seq*., because the Lava Project fails to comply with the National Environmental Policy Act (NEPA), 42 U.S.C. §§ 4321 *et seq*., and the National Forest Management Act (NFMA), 16 U.S.C. §§ 1601, *et seq.*

3.     The interagency consultation between Defendant USFS and Defendant United States Fish and Wildlife Service (FWS) required by the Endangered Species Act, 16 U.S.C. §§ 1531 *et. seq.* (ESA), including the Revised Biological Assessment dated November 13, 2013 (BA) prepared by Defendant USFS and the Biological Opinion dated March 13, 2014 prepared by Defendant FWS (BiOp), were each inadequate and flawed, and the respective analysis and determinations of the BA and the BiOp were arbitrary and capricious, all of which constitute violations of Section 7(a)(2) of the ESA. 16 U.S.C. § 1536(a)(2).

## JURISDICTION AND VENUE

4.     This Court is vested with jurisdiction under 28 USC § 1331(a) (action for declaratory and injunctive relief arising under the constitution and laws of the United States); 28 U.S.C. §§ 2201, 2202 (power to issue declaratory or injunctive relief in cases of actual controversy); and 5 U.S.C. §§702-706, because (1) the action arises under the laws of the United States, (2) defendant is sued in its official capacity; and (3) there is a present and actual controversy between the parties.

5.     The actions giving rise to this complaint took place in this District; thus, venue is properly vested in this Court pursuant to 28 U.S.C. §1391(e) and 5 U.S.C. § 703.

6.     There exists now between the parties hereto an actual, justiciable controversy.

7.     Plaintiff commented on and objected to the Lava Project. All available

administrative remedies have been exhausted.  The challenged agency actions are final and subject to this Court's review under 5 U.S.C. §§ 702, 704 and 706.

8.     This Court is vested with jurisdiction to enforce any provision of, or regulation issued under Section 11(g)(1) of the ESA. 16 U.S.C. § 1540(g)(1). As required by Section 11(g)(2), Plaintiff has provided each Defendant with written notice of the alleged violations of the ESA at least sixty (60) days prior to the commencement of this action. 16 U.SC. § 1540(2)(A) (60-Day Notice).

## PARTIES

9.     Plaintiff Conservation Congress is a non-profit 501 (c) (3) organization incorporated in the state of California, dedicated to maintaining, protecting, and restoring the native ecosystems of northern California. Plaintiff Conservation Congress has an organizational interest in the proper and lawful management of National Forests located in northern California, specifically including the Modoc NF. Plaintiff Conservation Congress' members, staff, and board members participate in a wide range of wildlife viewing, bird watching, and other recreational activities on the Modoc NF, including the Lava Project area and the surrounding lands. The interests of Plaintiff Conservation Congress and its members will be irreparably harmed if Defendants continue their violations of law.

10.     Plaintiff Conservation Congress has members who live or work in communities located near or adjacent to the Lava Project area. Plaintiff Conservation Congress' members use and enjoy the Modoc NF, including the area of the Lava Project, for a variety of purposes including, but not limited to, hiking, backpacking, photography, scientific study, wildlife observation, hunting, and fishing, and intend to continue to do so in the future. Plaintiff Conservation Congress' members derive recreational, spiritual, professional, aesthetic, educational, and other benefits and enjoyment from these activities.

11.     Defendant USFS's implementation of the Lava Project will harm and injure the interests of Plaintiff Conservation Congress and its members by causing or threatening irreversible adverse effects to the Modoc NF, including the project area, and to the wildlife and other objects of interest therein.  Defendant USFS's actions would deprive Plaintiff Conservation

Congress and its members of the recreational, spiritual, professional, aesthetic, educational, and other benefits they presently derive from the Modoc NF and the project area. Additionally, Defendant USFS's actions deny Plaintiff Conservation Congress and its members their right to have the laws implemented and enforced, and the satisfaction and peace of mind associated with witnessing the enforcement of this nation's environmental protection laws.

12.    Plaintiff Conservation Congress and its members and supporters are adversely affected and irreparably injured by Defendant USFS's impending implementation of the Lava Project. These injuries are actual and concrete and would be redressed by the relief sought herein. Plaintiff Conservation Congress has no adequate remedy at law.

13.    Defendant USFS is the agency within the United States Department of Agriculture charged with complying with the NEPA and the NFMA while making management decisions on national forests.

14.    Defendant FWS is the agency within the United States Department of Interior charged with complying with, and the enforcement of, the ESA for the species listed thereunder at issue in this action.

## FACTUAL BACKGROUND

**The Modoc National Forest**

15.    The Lava Project will occur wholly within the Modoc NF, which is located in Modoc and Siskiyou Counties, California.

16.    Numerous fuels reduction projects, salvage logging projects and timber sales have occurred, are occurring, or will occur adjacent to and around the Lava Project area throughout the Modoc NF and adjacent National Forests.

**The Lava Project**

17.    The Lava Project is located near the western boundary of the Modoc NF within the Doublehead and Big Valley Ranger Districts.

18.    The planning area of the Lava Project consists of approximately 8,390 acres of which 8,047 acres are forested, containing eastside pine and mixed conifer types with a species composition of white fir, incense cedar, ponderosa pine, knobcone pine and sugar pine. There are

1,031 acres of "plantations" within the Lava Project analysis area with ponderosa pine being the predominate species. Outside the plantations, large old ponderosa pines are scattered throughout the Lava Project area.

19.     According to the EA, the primary objective of the Lava Project is fuels reduction to address increased tree densities, altered species composition, and increased surface, ladder, and canopy fuels within the Lava Project area that are the result of a combination of human influences such as fire exclusion, past timber harvest, and grazing. According to the EA, areas within the Lava Project area are less resilient to inherent disturbances, such as fire, insects and disease, resulting in a heightened risk of standing-replacing wildfire, and outbreaks of insects and disease. In addition to the objective of fuels reduction, according to the EA the Lava Project aims to protect three electrical transmission lines that are part of the Western Interconnection Power Grid to safeguard the reliability and safety of the transmission infrastructure from wildfire.

20.     According to the EA, the purpose and need of the Lava Project is to "move the timbered stands within the project area towards their respective desired conditions based on silvicultural stand attributes (density and spacing) which would help to protect wildlife habitat and provide for to decrease [sic] fire behavior." According to the BA, the desired conditions include maintaining conditions for shade intolerant pine species, thin plantations to reduce competition, improve tree growth and vigor and treat fuels to reduce fire intensity, and to remove ladder fuels throughout the Lava Project area to reduce the potential for crown fires that would pose greater risk to firefighter safety and threaten the electrical transmission infrastructure.

21.     The Lava Project EA considered two alternatives, "Alternative 1 – No Action" and "Alternative 2 – Proposed Action." As described in the DN/FONSI, the USFS decided to implement Alternative 2.

22.     Under Alternative 2, the USFS proposes "silvicultural treatments" that include "thinning from below" on approximately 2,853 acres to remove trees (starting with the smallest first) until the desired basal area is achieved and to remove ladder and canopy fuels, "plantation thinning" on 886 acres targeting trees up to 10" Diameter at Breast Height (DBH) to achieved

desired spacing and density, and "radial thinning" on 22 acres that will remove trees up to 30" DBH around "remnant trees" (generally trees greater than 150 years old) and around sugar pines that are resistant to white pine blister rust. In addition, Alternative 2 proposes "fuels treatments" that include "underburning" on 3,277 acres after other siviculture and fuels treatments and on 740 acres as a stand-alone treatment, "hand pile and burn" on 73 acres, "mastication" on 960 acres, and the creation of a 58 acre 300-foot wide Fuels Management Zone (FMZ) along forest road 42N56 that would remove and chip approximately 1,200 trees/acre.

23.     Under Alternative 2, Defendant USFS also proposes to build .77 miles of temporary roads, and re-open and reconstruct old logging roads, to access the Lava Project areas. The Lava Project will require approximately 118 landings of one-half to one acre in size, of which up to 46 landings would be newly constructed. Cut stumps of felled 14" DBH or greater diameter would be treated with a borax fungicide.

**The Northern Spotted Owl**

24.     The northern spotted owl (*Strix occidentalis caurina*) (Spotted Owl) is listed as threatened under the ESA, and approximately 9.6 million acres of critical habitat have been designated in California, Oregon, and Washington, including critical habitat located in the Lava Project area (Critical Habitat). The Spotted Owl is declining in most parts of its range, and there has been a documented 30% decline in Spotted Owls in northern California in the past five years.

25.     The Lava Project will adversely impact the Spotted Owl and its habitat. Among other impacts, the Lava Project's sivicultural and fuels treatments will downgrade 416 acres of Spotted Owl foraging habitat, and remove 56.5 acres of foraging habitat and 1,336.5 acres of dispersal habitat, all of which will adversely affect the ability of the Spotted Owl to survive and reproduce in the Lava Project area and will contribute to the decline of the species towards extinction in northern California. Further, the downgrading and removal of Spotted Owl habitat will significantly and adversely impact two Spotted Owl activity centers, Border Mountain 1 (SIS-0429) and Boarder Mountain 2 (SIS-602).

//

//

**The Gray Wolf**

26.     The gray wolf (*Canis lupus*) (Gray Wolf) is listed as an endangered species under the ESA in the Lava Project area.

27.     The best scientific and commercial data available indicates that, at all times relevant in this action, the Gray Wolf was a species that may be present in the Lava Project area.

28.     The activities undertaken as part of, and associated with, implementation of the Lava Project are likely to affect the Gray Wolf.

**LEGAL BACKGROUND**

**The National Environmental Policy Act**

29.     The NEPA is our "basic national charter for protection of the environment."  40 C.F.R. § 1500.1(a). Congress enacted NEPA in 1969, directing all federal agencies to assess the environmental impact of the proposed actions that significantly affect the quality of the environment.  42 U.S.C. § 4332(2)(C). The NEPA's primary goals are to insure fully informed decision-making and to provide for public participation in environmental analyses and decision-making. *See id.* § 1500.1(b), (c). The Council on Environmental Quality ("CEQ") promulgated uniform regulations implementing the NEPA that are binding on all federal agencies. 40 C.F.R. §§ 1500 *et seq*.

30.     The NEPA is a procedural statute that requires federal agencies to take a "hard look" at the environmental consequences of its action.  A hard look includes a thorough investigation into environmental impacts and forthright acknowledgment of potential environmental harms.

31.     The NEPA also requires that agencies adequately consider and disclose cumulative effects.  Cumulative effects result from the incremental impact of the action when added to other past, present, and reasonably foreseeable future actions.  40 C.F.R. § 1508.25(a).

32.     The NEPA also requires that agencies prepare supplemental analysis if there is significant new information or if changed circumstances arise.  40 C.F.R. § 1502.9(c).

33.     The NEPA also requires that agencies to respond explicitly and directly to responsible opposing views.  40 C.F.R. § 1502.9(b).

**The National Forest Management Act**

34.    The NFMA requires that Defendant USFS carry out activities on national forest lands "consistent with the land management plans." 16 U.S.C. § 1604(i).

35.    Under the NFMA, Defendant USFS has developed and adopted the Modoc National Forest Plan (MFP), and the NFMA requires that each site-specific project on the Modoc NF, including the Lava Project, must comply with the MFP.

36.    Additionally, the Lava Project area is within the boundaries of the Northwest Forest Plan (NWFP) and the Sierra-Nevada Forest Plan Amendment (SNFPA), and the NFMA requires that the Lava Project be consistent with such land management plans.

**The Administrative Procedure Act**

37.    The APA provides for judicial review of final agency action.  5 U.S.C. §§ 701, 706.

38.    Under the authority of the APA, a reviewing court must hold unlawful and set aside agency action, findings, and conclusions found to be arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law.  5 U.S.C. § 706(2).

**The Endangered Species Act**

39.    The ESA was enacted to "provide a program for the conservation of . . . endangered species and threatened species" as well as "the ecosystems upon which [such species] depend." 16 U.S.C. § 1531(b). The ESA defines "conservation" as "the use of all methods and procedures which are necessary to bring any endangered species or threatened species to the point at which the measures provided pursuant to [the ESA] are no longer necessary." *Id.* § 1532(3). The ESA imposes duties concerning implementation of the ESA on the Secretary of the Interior; these duties have subsequently been delegated to the Director of Defendant FWS. 50 C.F.R. § 402.01(b).

40.    Section 7(a)(1) of the ESA requires all Federal agencies to "utilize their authorities in furtherance of the purposes of [the ESA]." 16 U.S.C. § 1536(a)(1). Section 7(a)(2) of the ESA requires that, "[e]ach federal agency shall, in consultation with [Fish and Wildlife Service], insure that any action authorized, funded, or carried out by such agency . . . is not likely

to jeopardize the continued existence of any endangered species or threatened species or result in the destruction or adverse modification of habitat of such species." *Id.* § 1536(a)(2). Federal agencies must, "at the earliest time possible," review their actions "to determine whether any action may affect listed species or critical habitat," in which case "formal consultation is required." 50 C.F.R. § 402.14(a).

41.     The "action agency" (in this case Defendant USFS) must prepare a biological assessment if a listed species or critical habitat "may be present" in the area of the proposed action. 16 U.S.C. § 1536(c)(1); 50 C.F.R. §§ 402.02(d), 402.12(d); *Endangered Species Consultation Handbook* § 3.4 at 3-11 (1998) (*Handbook*). A biological assessment shall evaluate the potential effects of the proposed action on listed, proposed and candidate species, and on designated and proposed critical habitat, that "may be present" in the project area. 16 U.S.C. § 1536(c)(1); 50 C.F.R. § 402.12(a). In the biological assessment the action agency shall determine whether any such species or critical habitat are likely to be affected by the proposed action and, if adversely affected by the action, whether formal consultation (in the case of listed species or designated critical habitat) is necessary. *Id.* The "consulting agency" (in this case the FWS) shall review the analysis and findings of the biological assessment to determine whether or not a listed species or critical habitat is likely to be adversely affected by the action. 50 C.F.R. § 402.12(k)(1). If the biological assessment indicates that a listed species or critical habitat is definitely present in the action area, but determines that the proposed action will have "no effect" or "may effect but not adversely affect" listed species or critical habitat, then the consulting agency may concur in such finding and determine that formal consultation is not required. 50 C.F.R. § 402.12(k)(1); *Handbook* § 3.3 at 3-7. In the alternative, if the biological assessment determines that a listed species or critical habitat may be adversely affected, or if the consulting agency determines that such adverse effect is likely, then the agencies will enter into formal consultation. 50 C.F.R. § 402.14(a); *Handbook* § 4.1 at 4-1. Formal consultation is concluded with the consulting agency's preparation of a biological opinion, which will include the agency's determination "whether the action, including its cumulative effects, is likely to jeopardize the continued existence of listed species or result in the destruction or adverse modification of

critical habitat," and will include "reasonably prudent alternatives" to mitigate jeopardy to the species or the destruction or adverse modification of critical habitat. 50 C.F.R. §§ 402.14(h)(3); 402.14(l)(1); *Handbook* § 4.5(A) at 4-11 - 45. If the consulting agency concludes that a proposed action will result in the take of a listed species but not jeopardize its continued existence, then the biological opinion will also include an "incidental take statement" authorizing the take of the listed species incidental to the action itself subject to reasonable and prudent measures to minimize the impact and other conditions specified by the consulting agency. 50 C.F.R. § 402.14(i); *Handbook* § 4.5(B) at 4-45 - 56.

42. Sections 7(a)(2) and 7(c)(1) of the ESA mandate that all Federal agencies involved in the consultation process must "use the best scientific and commercial data available" in fulfilling their obligations under the statute. 16 U.S.C. §§ 1536(a)(2), 1536(c)(1). The "best available scientific and commercial data" standard requires that a Federal agency must consider all available information. *San Luis & Delta-Mendota Water Authority v. Jewell*, 747 F.3d 581, 602 (9th Cir. 2014).

43. Section 11(g)(1) of the ESA provides that ". . . any person may commence a civil suit on his own behalf . . . to enjoin any person, including the United States and any other governmental instrumentality or agency . . . who is alleged to be in violation of any provision of this Act or regulation issued under the authority thereof . . ." 16 U.S.C. § 1540(1)(A). Section 11(g)(2) requires that any no action may be commenced unless written notice of the alleged violation has been given to the Secretary [as defined in 16 U.S.C. § 1532(15)] and to any alleged violator. 16 U.S.C. § 1540(2)(A).

### FIRST CLAIM FOR RELIEF

### USFS Violation of the NEPA and the APA

### The USFS failed to adequately analyze and disclose the culmulative effects of the Lava Project

44. Plaintiff incorporates by reference all preceding paragraphs.

45. NEPA requires federal agencies to analyze and disclose the past, present, and foreseeable environmental impacts, including cumulative impacts, of "major federal actions." 42

U.S.C. § 4332(c)(I); 40 C.F.R. § 1508.7.

46.     Cumulative effects result from the incremental impact of the action when added to other past, present, and reasonably foreseeable future actions.  40 C.F.R. § 1508.25(a).

47.     A federal timber sale is a major federal action as defined by NEPA.

48.     Defendant USFS failed to adequately or accurately analyze the cumulative effects of the project when combined with the adjacent Porcupine timber sale.

49.     Defendant USFS's failure to adequately disclose or analyze the cumulative effects of the Lava Project is arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law under the APA, 5 U.S.C. § 706(2).

50.     Accordingly, the decision to proceed should be set aside, and the Lava Project should be enjoined until the USFS prepares a NEPA document that includes an adequate and accurate cumulative effects analysis.

51.     Plaintiff is entitled to its reasonable fees, costs, and expenses associated with this litigation pursuant to the Equal Access to Justice Act, 28 U.S.C. § 2412.

## SECOND CLAIM FOR RELIEF

### USFS Violation of the NEPA and the APA

### The USFS failed to prepare an environmental impact statement due to the Lava Project's significant effects

52.     Plaintiff incorporates by reference all preceding paragraphs.

53.     NEPA requires an Environmental Impact Statement (EIS) for any major Federal action that may significantly affect the quality of the human environment.  42 U.S.C. § 4332(2)(C); 40 C.F.R. § 1502.3.

54.     Significance is defined in terms of both context and intensity.  40 C.F.R. § 1508.27.

55.     The intensity of a major federal action may be significant under the following factors:

A.  "The degree to which the effects on the quality of the human environment are likely to be highly controversial," 40 C.F.R. § 1508.27(b)(4);

B.  "The degree to which the effects on the human environment are highly uncertain or involve or involve unique or unknown risks," 40 C.F.R. § 1508.27(b)(5); and

C.  "The degree to which the action may adversely affect an endangered or threatened species or its habitat that has been determined to be critical under the Endangered Species Act of 1973." 40 C.F.R. § 1508.27(a)(9).

56.     The Lava Project is significant under NEPA because the project is highly controversial and the project is highly uncertain, as indicated by the scientific disagreement Defendant USFS and Defendant USFW regarding the adverse effects to the northern spotted owl and the take of four spotted owls.

57.     The Lava Project is significant under NEPA because the project will result in significant adverse effects to the northern spotted owl, as indicated by USFS's determination that the project "may affect, likely to adversely affect" northern spotted owls and the take of four northern spotted owls.

58.     Defendant USFS's failure to prepare an EIS in light of significant effects is arbitrary, capricious, not in accordance with law, and without observance of procedures required by law.

59.     Defendant's approval of the Lava Project is arbitrary, capricious, not in accordance with law, and without observance of procedures required by law, within the meaning of APA, 5 U.S.C. § 706.

60.     Accordingly, the decision to proceed should be set aside, and the Lava Project should be enjoined until the USFS prepares an environmental impact statement.

61.     Plaintiff is entitled to its reasonable fees, costs, and expenses associated with this litigation pursuant to the Equal Access to Justice Act, 28 U.S.C. § 2412.

### THIRD CLAIM FOR RELIEF

### USFS Violation of the NEPA and the APA

### The USFS failed to take a hard look at the environmental impacts of the Lava Project

62.     Plaintiff incorporates by reference the preceding paragraphs

63.   The National Environmental Policy Act (NEPA) requires federal agencies to analyze the foreseeable environmental impacts, including direct and indirect impacts, of "major federal actions."  42 U.S.C. § 4332(c)(I); 40 C.F.R. § 1508.7.

64.   A federal timber sale is a major federal action as defined by NEPA.

65.   The Lava Project EA failed to adequately analyze the direct and indirect effects of the Lava Project, including but not limited to the following:

    A.  Adverse effects to the northern spotted owl and northern spotted owl habitat, including but not limited to critical habitat;

    B.  Beneficial effects to northern spotted owl habitat from natural disturbances, including wildfire;

    C.  The project's non-mandatory, unclear, and subjective mitigation measures and their ability to actually mitigate the Lava Project's adverse effects;

    D.  The effects to the Medicine Lake Highlands Managed Late Successional Area; and

    E.  The adverse effects to large, old trees and late successional forests.

66.   Defendant USFS's actions as described above are arbitrary, capricious, not in accordance with law, and without observance of procedures required by law, within the meaning of the APA, 5 U.S.C. § 706.

67.   Plaintiff is entitled to its reasonable fees, costs, and expenses associated with this litigation pursuant to the Equal Access to Justice Act, 28 U.S.C. § 2412.

**FOURTH CLAIM FOR RELIEF**

**USFS Violation of the NEPA and the APA**

**The USFS failed to prepare a reasonable range of alternatives and failed to consider all reasonable alternatives**

68.   Plaintiff incorporates by reference the preceding paragraphs.

69.   In both EAs and EISs, NEPA requires agencies to "study, develop and describe

the appropriate alternatives to recommended courses of action in any proposal which involves unresolved conflicts concerning alternative uses of available resources." 42 U.S.C. § 4332(2)(E).

70.     Agencies "shall rigorously explore and objectively evaluate all reasonable alternatives, and for alternatives, which were eliminated from detailed study, briefly discuss the reasons for their having been eliminated."  40 C.F.R. § 1502.14(a).

71.     The Lava Project EA failed to prepare a reasonable range of alternatives.  The Lava Project considered only two action alternatives: the no action alternative and the proposed action alternative.

72.     Plaintiff specifically requested that Defendant USFS consider an alternative that prioritized the northern spotted owl and its designated critical habitat by making it the driving force in the project.  Defendant USFS arbitrarily failed to consider this reasonable alternative in detail.

73.     Defendant USFS's actions as described above are arbitrary, capricious, not in accordance with law, and without observance of procedures required by law, within the meaning of the APA, 5 U.S.C. § 706.

74.     Plaintiff is entitled to its reasonable fees, costs, and expenses associated with this litigation pursuant to the Equal Access to Justice Act, 28 U.S.C. § 2412.

**FIFTH CLAIM FOR RELIEF**

**USFS Violation of the NFMA and the APA**

**The USFS failed to comply with specific Standards and Guidelines and other provisions set forth in the applicable forest plans**

75.     Plaintiff incorporates by reference the preceding paragraphs.

76.     The NFMA requires that all projects comply with the forest plans applicable and relevant to the Lava Project; in this case the MFP, the SNFPA and the NWFP.

77.     The selected Alternative 2 approved by the USFS to implement the Lava Project is not consistent with the Standards and Guidelines and other provisions of the MFP, the SNFPA and the NWFP as required by the NFMA, including but not limited to the following:

//

A.  The MFP requires that Defendant USFS maintain dead/down material, hardwoods, and snags at naturally occurring levels, and the SNFPA sets forth specific Standards and Guidelines for the retention of "Snags and Down Woody Material." Defendant USFS failed to provide and to demonstrate that it is maintaining dead/down material, hardwoods, and snags at naturally occurring levels or otherwise consistent with the management prescriptions of the SNFPA.

B.  The SNFPA sets forth specific Standards and Guidelines for "Fire and Fuels Management" and for "Mechanical Thinning Treatments," the latter which requires that projects within certain forest habitats using mechanical thinning treatments Spotted Owl Home Range Core Areas must, if possible, retain at least 50% canopy cover averaged over the treatment unit or a minimum of 40% if not possible, and retain the same levels of canopy cover outside of Spotted Owl Home Range Areas if possible and subject to certain additional exceptions.

78.   Defendant USFS's actions approving Alternative 2 to implement the Lava Project and as described above were arbitrary, capricious, not in accordance with law, and without observance of procedures required by law, within the meaning of the APA, 5 U.S.C. § 706.

79.   Plaintiff is entitled to its reasonable fees, costs, and expenses associated with this litigation pursuant to the Equal Access to Justice Act, 28 U.S.C. § 2412.

### SIXTH CLAIM FOR RELIEF

### USFS Violation of the NFMA and the APA

### The Lava Project is not consistent with the Revised Recovery Plan for the Spotted Owl

80.   Plaintiff incorporates by reference the preceding paragraphs.

81.   The MFP, the SNFPA and/or the NWFP require that Defendant USFS manage the Modoc NF to implement and be consistent with ESA-listed individual species recovery plans, including the 2011 Revised Recovery Plan (RRP) for the Spotted Owl.

82.     The selected Alternative 2 approved by Defendant USFS to implement the Lava Project violates the NFMA because Alternative 2 is not consistent with the Standards and Guidelines and other provisions of the MFP, the SNFPA and the NWFP requiring the implementation of, and consistency with, the provisions of the RRP.

83.     The selected Alternative 2 will not promote the recovery of the Spotted Owl by, among other impacts, degrading and removing Spotted Owl habit that is currently below recommended levels, and by decreasing the connectivity and increasing the fragmentation of Spotted Owl habit in the Lava Project area.

84.      Defendant USFS' actions as described above are arbitrary, capricious, not in accordance with law, and without observance of procedures required by law, within the meaning of the APA, 5 U.S.C. § 706.

85.     Plaintiff is entitled to its reasonable fees, costs, and expenses associated with this litigation pursuant to the Equal Access to Justice Act, 28 U.S.C. § 2412.

**SEVENTH CLAIM FOR RELIEF**

**USFS Violation of the ESA and the APA**

**The analysis and determinations in the BA regarding the adverse effects of the Lava Project on the Spotted Owl and its Critical Habitat are inadequate and flawed**

86.     Plaintiff incorporates by reference the preceding paragraphs.

87.     The ESA requires that Defendant USFS prepare a biological assessment using the best scientific and commercial data available to evaluate the potential effects of the Lava Project on listed and proposed species and designated and proposed critical habitat, and determine whether any such species or critical habitat are likely to be adversely affected by the action.

88.     The BA prepared by Defendant USFS purporting to analyze the effects of the Lava Project on the Spotted Owl and its Critical Habitat is inadequate and flawed for a variety of reasons, including but not limited to the fact that the BA is not based on the best scientific and commercial data available, fails to properly analyze the information it did consider, fails to consider important aspects of the effects of the Lava Project on the Spotted Owl and its Critical Habitat, and fails to consider relevant factors and articulate a rational connection between the

data and facts, and the findings, assessment and determinations made in the BA regarding the Spotted Owl and its Critical Habitat.

89.     Subsequent to the preparation of the BA, relevant and significant new scientific and commercial data has become available that requires revaluation of the analysis and reconsideration of the findings, assessment and determinations of the BA.

90.     Defendant USFS was advised of these violations in the 60-Day Notice, but has not responded to such notice or taken any action to address such violations, which are continuing or reasonably likely to continue to occur.

91.     Defendant USFS' actions in the preparation, analysis, findings, determinations and issuance of the BA were arbitrary, capricious and in violation of Section 7(a)(2) of the ESA, 16 U.S.C. § 1536(a)(2), and the APA, 5 U.S.C. § 706(2).

92.     Plaintiff is entitled to its reasonable fees, costs, and expenses associated with this litigation under Section 11(g)(4) of the ESA, 16 U.S.C. § 1540(g)(4).

**EIGHTH CLAIM FOR RELIEF**

**USFS Violation of the ESA and the APA**

**The analysis and determinations in the BA regarding the effects of the
Lava Project the Gray Wolf are inadequate and flawed**

93.     Plaintiff incorporates by reference the preceding paragraphs.

94.     Despite available and credible scientific and commercial data indicating that the Gray Wolf may be present in the Lava Project area, Defendant USFS excluded the Gray Wolf from the BA's analysis and assessment of the effects from implementation of the Lava Project by making the finding and determination that the Lava Project lies "outside of the known or expected range" or does not contain "suitable habitat" for the Gray Wolf.

95.     Based on its finding and determination that the Lava Project was "outside of the known or expected range" of the Gray Wolf, or did not contain "suitable habitat" for the Gray Wolf, Defendant USFS determined that implementation of the Lava Project would have "no effect" on the Gray Wolf.

96.     The BA prepared by Defendant USFS analyzing the effects of the Lava Project on the Gray Wolf is inadequate and flawed for a variety of reasons, including but not limited to the

fact that the BA is not based on the best scientific and commercial data available, fails to properly analyze the information it did consider, excludes the Gray Wolf from the listed species considered in the BA's analysis of adverse effects from implementation of the Lava Project, fails to consider important aspects of the effects of the Lava Project on the Gray Wolf, and fails to consider relevant factors and articulate a rational connection between the data and facts, and the findings and determinations made in the BA regarding the Gray Wolf.

97.     Defendant USFS' actions in the preparation, analysis, findings, determinations and issuance of the BA were arbitrary, capricious and in violation of Sections 7(a)(2) and 7(c)(1) of the ESA, 16 U.S.C. § 1536(a)(2) and (c)(1), and the APA, 5 U.S.C. § 706(2).

98.     Plaintiff is entitled to its reasonable fees, costs, and expenses associated with this litigation under Section 11(g)(4) of the ESA, 16 U.S.C. § 1540(g)(4).

### NINTH CLAIM FOR RELIEF

### USFS Violation of the ESA and the APA

### The USFS failed to reinitiate consultation regarding the effects of the Lava Project the Gray Wolf

99.     Plaintiff incorporates by reference the preceding paragraphs.

100.    Subsequent to the preparation of the BA, relevant and significant new scientific and commercial data became available on or about August, 2015, that the Gray Wolf may be present in the area of, and effected by, the Lava Project that requires Defendant USFS to reinitiate consultation with Defendant FWS regarding the Gray Wolf under 16 U.S.C. § 1536(a)(2) as required under 50 C.F.R. § 402.16.

101.    Defendant USFS was advised of these violations in the 60-Day Notice, but has not responded to such notice or taken any action to address such violations, which are continuing or reasonably likely to continue to occur.

102.    Defendant USFS' failure to reinitiate consultation with the FWS was arbitrary, capricious and in violation of Section 7(a)(2) of the ESA, 16 U.S.C. § 1536(a)(2), 50 C.F.R. § 402.16 and the APA, 5 U.S.C. § 706(2).

103.    Plaintiff is entitled to its reasonable fees, costs, and expenses associated with this

litigation under Section 11(g)(4) of the ESA, 16 U.S.C. § 1540(g)(4).

## TENTH CLAIM FOR RELIEF

### FWS Violation of the ESA and the APA

### The FWS improperly concurred in the BA's determination that the Lava Project would not result in the destruction or adverse modification of Spotted Owl Critical Habitat

104.    Plaintiff incorporates by reference the preceding paragraphs.

105.    In the BA, Defendant USFS determined that there would be "no destruction or adverse modification" of Critical Habitat from implementation of the Lava Project.

106.    Defendant FWS concurred in Defendant USFS' determination regarding Critical Habitat, notwithstanding the acknowledged destruction and/or adverse modification of Critical Habitat that would result from implementation of the Lava Project.

107.    Defendant FWS' concurrence in the analysis and determinations of the BA regarding the effects of the Lava Project on Critical Habitat was flawed and improper for a variety of reasons, including but not limited to the fact that the BA's analysis and determinations regarding Critical Habitat is not based on the best scientific and commercial data available, fails to properly analyze the information it did consider, fails to consider important aspects of the effects of the Lava Project on Critical Habitat, and fails to consider relevant factors and articulate a rational connection between the data and facts, and the analysis and determinations regarding Critical Habitat.

108.    Without limiting the foregoing, Defendant FWS also failed to require the implementation of any enforceable Reasonably Prudent Alternatives (RPAs) to mitigate the acknowledged destruction or adverse modification of Critical Habitat, and failed to analyze and make its determinations regarding the destruction or adverse modification of Critical Habit at all relevant spatial and temporal scales.

109.    Subsequent to the preparation of the BA, relevant and significant new scientific and commercial data has become available that requires reevaluation of the analysis and reconsideration of the determinations in the BA regarding Critical Habitat and Defendant FWS' concurrence in such analysis and determinations.

110.    Defendant FWS was advised of these violations in the 60-Day Notice, but has not responded to such notice or taken any action to address such violations, which are continuing or reasonably likely to continue to occur.

111.    Defendant FWS' concurrence in the preparation, analysis and determinations of the BA regarding Critical Habitat were arbitrary, capricious and in violation of Section 7(a)(2) of the ESA, 16 U.S.C. § 1536(a)(2), and the APA, 5 U.S.C. § 706(2).

112.    Plaintiff is entitled to its reasonable fees, costs, and expenses associated with this litigation under Section 11(g)(4) of the ESA, 16 U.S.C. § 1540(g)(4).

113.    Defendant FWS' actions as described above are arbitrary, capricious, not in accordance with law, and without observance of procedures required by law, within the meaning of the APA, 5 U.S.C. § 706(2).

114.    Plaintiff is entitled to its reasonable fees, costs, and expenses associated with this litigation pursuant to the Equal Access to Justice Act, 28 U.S.C. § 2412.

### ELEVENTH CLAIM FOR RELIEF

### FWS Violation of the ESA and the APA

### The analysis and determinations in the BiOp regarding the adverse effects of the Lava Project on the Spotted Owl are inadequate and flawed

115.    Plaintiff incorporates by reference the preceding paragraphs.

116.    In the BiOp, Defendant FWS concurred with Defendant USFS that the implementation of the Lava Project "may affect and is likely to adversely affect" the Spotted Owl, and determined that the Lava Project was "not likely to jeopardize the continued existence of the northern spotted owl."

117.    In the BiOp, Defendant FWS determined that implementation of the Lava Project was expected to result in "take in the form of harassment," and issued an Incidental Take Statement to Defendant USFS for the "take" of four individual adult Spotted Owls.

118.    The BiOp prepared by Defendant FWS purporting to analyze the effects of the Lava Project on the Spotted Owl is inadequate and flawed for a variety of reasons, including but not limited to the fact that the BiOp is not based on the best scientific and commercial data

available, fails to properly analyze the information it did consider, fails to consider important aspects of the effects of the Lava Project on the Spotted Owl, and fails to consider relevant factors and articulate a rational connection between the data and facts, and the findings, assessment and determinations made in the BiOp regarding the Spotted Owl.

119. Without limiting the foregoing, Defendant FWS' analysis and determinations in the BiOp of "no jeopardy" to the Spotted Owl were arbitrary and capricious by:

A. Comparing the adverse effects of the Lava Project on the occupancy and productivity of Spotted Owl activity centers adversely affected by the Lava Project to the Spotted Owl population trend and distribution at the Province, recovery unit and range scales, thereby masking the potentially significant impact of adverse effects on Spotted Owl survival and recovery at smaller spatial and temporal scales;

B. Comparing the amount of foraging and dispersal habitat downgraded or removed by the Lava Project to the habitat available range-wide, thereby masking the potentially significant impact of adverse effects on Spotted Owl habitats on the survival and recovery of the Spotted Owl at smaller spatial and temporal scales;

C. Basing such analysis and determinations upon conclusions regarding habitat distribution and species populations and distribution from a flawed and inadequate environmental baseline that was not supported by adequate surveys of the Lava Project area for Spotted Owls and invasive barred owls;

D. Determining that the Lava Project satisfies the "intent" of RRP Recovery Action 10 by concluding that the long-term benefits of treatments to reduce fire threat to underrepresented foraging and dispersal habitats within the core area and home range of Spotted Owl activity centers offset and justify the negative short-term effects, and will "conserve" important and underrepresented Spotted Owl habitat; and

E. Approving the incidental take of four adult Spotted Owls without the imposition of enforceable RPAs to mitigate such take.

120.    Defendant FWS was advised of these violations in the 60-Day Notice, but has not responded to such notice or taken any action to address such violations, which are continuing or reasonably likely to continue to occur.

121.    Defendant FWS' actions in the preparation, analysis, findings and issuance of the BA were arbitrary, capricious and in violation of Section 7(a)(2) of the ESA, 16 U.S.C. § 1536(a)(2), and the APA, 5 U.S.C. § 706(2).

122.    Plaintiff is entitled to its reasonable fees, costs, and expenses associated with this litigation under Section 11(g)(4) of the ESA, 16 U.S.C. § 1540(g)(4).

### TWELFTH CLAIM FOR RELIEF

### USFS Violation of the ESA and the APA

### The USFS' reliance on the BiOp to fulfill its duties under Section 7(a)(2) of the ESA was arbitrary and capricious

123.    Plaintiff incorporates by reference the preceding paragraphs.

124.    Under Section 7(a)(2) of the ESA, Defendant USFS has an independent and continuing duty to avoid actions that would adversely modify the critical habitat or jeopardize the continued existence of a listed species. Defendant USFS may not rely solely on a biological opinion to establish its compliance with its substantive obligations under Section 7(a)(2).

125.    Defendant USFS' decision to rely on the BiOp was arbitrary and capricious in that the analysis and determinations set forth in the BiOp were flawed and failed to prevent jeopardy and/or adverse destruction or modification to Critical Habitat in violation of Section 7(a)(2) and implementation regulations.

126.    Defendant USFS was advised of these violations in the 60-Day Notice, but has not responded to such notice or taken any action to address such violations, which are continuing or reasonably likely to continue to occur.

127.    Defendant USFS' decision and actions to rely on the flawed analysis and determinations of the BiOp were arbitrary, capricious and in violation of Section 7(a)(2) of the ESA, 16 U.S.C. § 1536(a)(2), and the APA, 5 U.S.C. § 706(2).

128.    Plaintiff is entitled to its reasonable fees, costs, and expenses associated with this

COMPLAINT                                                                                    22

litigation under Section 11(g)(4) of the ESA, 16 U.S.C. § 1540(g)(4).

**PLAINTIFF'S PRAYER FOR RELIEF**

WHEREFORE, Plaintiff respectfully requests that this Court enter a judgment in favor of Plaintiff and issue the following relief:

129.   declare that Defendant USFS violated the NEPA and the APA;

130.   declare that Defendant USFS violated the NFMA and the APA;

131.   declare that Defendant USFS violated the ESA and the APA;

132.   declare that Defendant FWS violated the ESA and the APA;

133.   declare that the Defendants' actions as set forth in this Complaint are arbitrary, capricious, an abuse of their discretion, are not in accordance with law and are without observance of procedures required by law and therefore must be set aside pursuant to the APA, 5 U.S.C. §706 (2);

134.   vacate the EA and DN/FONSI and remand the matter to the Defendant USFS;

135.   vacate the BA and the BiOp (including, without limitation, the Incidental Take Statement) and remand the matter to the Defendants USFS and FWS;

136.   enjoin Defendant USFS from implementing the Lava Project including, without limitation, from continuing with or the operation of any sale or contract pursuant to the Lava Project until Defendant has complied with the NEPA, the NFMA, the ESA and the APA;

137.   award Plaintiff its reasonable fees, costs, and expenses associated with this litigation pursuant to the Equal Access to Justice Act, 28 U.S.C. § 2412, Section 11(g)(4) of the ESA, 16 U.S.C. § 1540(g)(4), or other authority; and

138.   grant Plaintiff such additional and further relief as the Court deems just and equitable.

Respectfully submitted this 26th day of April, 2016,

/s/ Andrew G. Ogden
Andrew G. Ogden

/s/ Sean Malone
SEAN MALONE
*Pro Hac Vice Application Pending*

Attorneys for Plaintiff