JEFFREY H. WOOD, Acting Assistant Attorney General
SETH M. BARSKY, Chief
S. JAY GOVINDAN, Assistant Section Chief
SARAH J. SHEFFIELD, HI Bar No. 10415
Trial Attorney
United States Department of Justice
Environment & Natural Resources Division
Wildlife & Marine Resources Section
Ben Franklin Station
P.O. Box 7611
Washington, D.C. 20044-7611
Tel: (202) 305-0211
Fax: (202) 305-0275
sarah.sheffield@usdoj.gov

SHAUN M. PETTIGREW, CA Bar No. 254564
Trial Attorney
Natural Resources Section
P.O. Box 7611
Washington D.C. 20044-7611
Tel: (202) 305-3895
Fax: (202) 305-0506
shaun.pettigrew@usdoj.gov

*Attorneys for Federal Defendants*

**UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| _____ )<br><br>CONSERVATION CONGRESS, )<br> )<br>Plaintiff, )<br> )<br>v. )<br> )<br>UNITED STATES FOREST SERVICE, )<br>and the UNITED STATES FISH AND )<br>WILDLIFE SERVICE, )<br> )<br>Federal Defendants. )<br>_____ ) | CASE NO. 2:16-CV-00864-MCE-AC<br><br>**FEDERAL DEFENDANTS' REPLY MEMORANDUM IN SUPPORT OF CROSS-MOTION FOR SUMMARY JUDGMENT**<br><br>Date: March 22, 2018 (hearing vacated)<br>Time: 2:00 p.m.<br>Courtroom: 7 |

**TABLE OF CONTENTS**

I.    INTRODUCTION ................................................................................................. 1

II.   ARGUMENT ...................................................................................................... 2

    A.   Plaintiff lacks standing to bring an ESA claim concerning the gray wolf because it has not demonstrated an actual and imminent injury to its interests in the wolf. ............................................................................... 2

    B.   Federal Defendants are entitled to summary judgment on the ESA claims. .......... 6

        1.   The Forest Service complied with the procedural requirements of ESA Section 7. ........................................................................... 7

        2.   Plaintiff has failed to show that the Forest Service's "no effect" determination was unlawful ................................................... 12

        3.   The Forest Service had no obligation to consult on the effects of the Project on the gray wolf. ...................................................... 14

        4.   FWS reasonably concluded that the effects of the Lava Project would not result in the destruction or adverse modification of NSO critical habitat. ............................................................ 18

    C.   Federal Defendants are entitled to summary judgment on the NEPA claims. ....... 18

    D.   Plaintiff is not entitled to injunctive relief. ........................................... 19

III.  CONCLUSION ................................................................................................. 20

1

# TABLE OF AUTHORITIES

**Cases**

*Autolog Corp. v. Regan*,
   731 F.2d 25 (D.C. Cir. 1984) ............................................................................. 3

*Clapper v. Amnesty International USA*,
   568 U.S. 398 (2013) ...................................................................................... 4, 5

*Coal. for a Sustainable Delta v. FEMA*,
   812 F. Supp. 2d 1089 (E.D. Cal. 2011) ............................................................ 15

*Coleman v. Brown*,
   938 F. Supp. 2d 955 (E.D. Cal. 2013) ................................................................ 2

*Conservation Cong. v. U.S. Forest Serv.*,
   235 F. Supp. 3d 1189 (E.D. Cal. 2017) .............................................................. 6

*Conservation Congress v. U.S. Forest Service*,
   No. 2:15-00249 WBS AC, 2016 WL 3126116 (E.D. Cal. June 2, 2016) ................. 15

*Ctr. for Biological Diversity v. U.S. Fish & Wildlife Serv.*,
   450 F.3d 930 (9th Cir. 2006) ............................................................................. 6

*Cuviello v. Cal Expo*,
   Civ. No. S-11-2456 KJM EFB, 2013 WL 2664629 (E.D. Cal. June 12, 2013) ........ 2

*eBay Inc. v. MercExchange, LLC*,
   547 U.S. 388 (2006) ....................................................................................... 19

*Friends of the River v. U.S. Army Corps of Eng'rs*,
   870 F. Supp. 2d 966 (E.D. Cal. 2012) ............................................................... 14

*Hall v. Norton*,
   266 F.3d 969 (9th Cir. 2001) ............................................................................. 5

*Lujan v. Defs. of Wildlife*,
   504 U.S. 555 (1992) ......................................................................................... 3

*Maya v. Centex Corp.*,
   658 F.3d 1060 (9th Cir. 2011) ........................................................................... 3

*Monsanto Co. v. Geertson Seed Farms*,
   561 U.S. 139 (2010) ....................................................................................... 19

*Nat. Res. Def. Council v. Kempthorne*,
   506 F. Supp. 2d 322 (E.D. Cal. 2007) .............................................................. 20

*Nat'l Audubon Soc'y v. Davis*,
   307 F.3d 835 (9th Cir. 2002) ............................................................................. 3

*Pac. Rivers Council v. Thomas*,
   30 F.3d 1050 (9th Cir. 1994) ........................................................................ 7, 14

*Pac. Rivers Council v. U.S. Forest Serv.*,
   942 F. Supp. 2d 1014 (E.D. Cal. 2013) ............................................................... 19

*Sierra Club v. EPA*,
   292 F.3d 895 (D.C. Cir. 2002) .......................................................................... 2

*Summers v. Earth Island Inst.*,
   555 U.S. 488 (2009) ..................................................................................... 3

*Susan B. Anthony List v. Driehaus*,
   134 S. Ct. 2334 (2014) .................................................................................. 5

*Sw. Ctr. for Biological Diversity v. U.S. Forest Serv.*,
   100 F.3d 1443 (9th Cir. 1996) ............................................................. 8, 10, 11, 12

*Trout Unlimited v. Lohn*,
   559 F.3d 946 (9th Cir. 2009) .......................................................................... 18

*W. Watersheds Project v. Kraayenbrink*,
   632 F.3d 472 (9th Cir. 2011) .......................................................................... 12

*Water v. Flowers*,
   377 F. Supp. 2d 844 (E.D. Cal. 2004) ................................................................. 7

*Weinberger v. Romero-Barcelo*,
   456 U.S. 305 (1982) .................................................................................... 19

*Wild Rockies v. Kruger*,
   950 F. Supp. 2d 1172 (D. Mont. 2013) ........................................................... 7, 8, 9

*Zamani v. Carnes*,
   491 F.3d 990 (9th Cir. 2007) .......................................................................... 2

**Statutes**

16 U.S.C. § 1532(19) ....................................................................................... 5

16 U.S.C. § 1536(c)(1) ............................................................................... 7, 13

**Regulations**

50 C.F.R. §§ 402.13 ....................................................................................... 8

50 C.F.R. 402.12(b) ....................................................................................... 7

1
2

## I.      INTRODUCTION

The U.S. Forest Service (Forest Service) spent nearly seven years designing and consulting on the Lava Hazardous Fuels Reduction project (Lava Project or Project), with the goals of reducing wildfire, maintaining and enhancing wildlife habitat, improving forest health, and protecting people and property in and around the Modoc National Forest.  During this process, gray wolves, a recently returned species to California, were <u>never</u> detected in the Project area.  Despite this core fact, Plaintiff challenges the Lava Project by suggesting that the Forest Service violated the Endangered Species Act (ESA) when it determined that the Project would have no effect on the species.  But the record clearly shows that the agency's decision was rational, reasoned, and well-supported.

As an initial matter, Plaintiff has yet to satisfy the requirements for demonstrating standing to bring the gray wolf claim, despite filing another declaration with its reply in an attempt to remedy this issue.  Critically, Plaintiff has failed to demonstrate an actual and imminent injury to its interests in the gray wolf.  This is driven in large part by the fact that Plaintiff's alleged injury rests entirely on speculation that wolves could be in the area and if they are, the Project might harm them.  Such an attenuated chain of possibilities does not and cannot satisfy the requirement that the threatened injury be actual, imminent, and certainly impending.

Even if Plaintiff had demonstrated standing, its gray wolf ESA claims fail on the merits.  Indeed, Plaintiff once again relies on a flawed understanding of ESA Section 7, continuing to conflate the "may be present" standard with the distinct "no effect" standard.  This improperly blurs the requirements of the ESA and is unavailing.  Instead, the record shows that the Forest Service complied with the requirements of the ESA by (i) acknowledging in the biological assessment (BA) that gray wolves "may be present" in the Project area, and (ii) reasonably

concluding, based on the best evidence available, that the Project would have "no effect" on the species.

Finally, Plaintiff leaves unanswered the arguments raised in Federal Defendants' cross-motion for summary judgment dealing with the Northern Spotted Owl (NSO or owl) critical habitat ESA claim and all of the National Environmental Policy Act (NEPA) claims.  Such a response – or lack thereof – is insufficient to establish Plaintiff's entitlement to the remedy it seeks on these claims.

In sum, Plaintiff's arguments are not grounded in the law or the facts, and are insufficient to overcome the substantial deference owed to Federal Defendants' decisions regarding the Lava Project.  The Court should deny Plaintiff's motion for summary judgment and grant Federal Defendants' cross-motion for summary judgment.

## II.     ARGUMENT

### A.     Plaintiff lacks standing to bring an ESA claim concerning the gray wolf because it has not demonstrated an actual and imminent injury to its interests in the wolf.

Perhaps recognizing that Ms. Boggs's declaration was insufficient to demonstrate standing, Plaintiff makes another attempt by filing a second standing declaration (ECF No. 58). As an initial matter, this second standing declaration is not timely submitted and should not be considered by the Court.  *Coleman v. Brown*, 938 F. Supp. 2d 955, 974 n.35 (E.D. Cal. 2013) ("The time and place for defendants to submit this declaration . . . was in their moving papers, not in their Reply."); *Zamani v. Carnes*, 491 F.3d 990, 997 (9th Cir. 2007) ("The district court need not consider arguments raised for the first time in a reply brief."); *Cuviello v. Cal Expo*, Civ. No. S-11-2456 KJM EFB, 2013 WL 2664629, at *7 (E.D. Cal. June 12, 2013) (declining to consider Plaintiff's standing declarations submitted with reply brief); *Sierra Club v. EPA*, 292 F.3d 895, 900 (D.C. Cir. 2002) ("[A] petitioner whose standing is not selfevident should

FEDERAL DEFENDANTS' REPLY IN SUPPORT OF CROSS-MOTION FOR SUMMARY JUDGMENT
*Conservation Cong. v. U.S. Forest Serv.*, 2:16-CV-00864-MCE-AC                                  2

establish its standing by the submission of its arguments and any affidavits or other evidence

appurtenant thereto <u>at the first appropriate point in the review proceeding</u>." (emphasis added)).

But, even if the second declaration were timely, Plaintiff has still failed to carry its

burden of establishing standing for the gray wolf claim.  Indeed, the second declaration suffers

from the same fundamental flaws as the first, namely that it fails to demonstrate an "actual and

imminent" injury to Plaintiff's alleged interests.  *See Summers v. Earth Island Inst.*, 555 U.S.

488, 493 (2009) ("To seek injunctive relief, a plaintiff must show that he is under threat of

suffering 'injury in fact' that is concrete and particularized; the threat must be actual and

imminent, not conjectural or hypothetical[.]").  [1]  Additionally, "plaintiffs must establish a 'line of

causation' between defendants' action and their alleged harm that is more than 'attenuated.'"

*Maya v. Centex Corp.*, 658 F.3d 1060, 1070 (9th Cir. 2011) (citation omitted).  A causal chain

does not fail simply because it has several "links," provided those links are "not hypothetical or

tenuous" and remain "plausib[le]."  *Nat'l Audubon Soc'y v. Davis*, 307 F.3d 835, 849 (9th Cir.

2002) (*citing Autolog Corp. v. Regan*, 731 F.2d 25, 31 (D.C. Cir. 1984) ("What matters is not the

'length of the chain of causation,' but rather the 'plausibility of the links that comprise the

chain.'") (citation omitted)).

Here, however, Plaintiff's injury is based on speculation, untethered from the facts in this

case, that a wolf will wander through the Project area and be harmed by the Project.  Such

speculation does not meet the test for "actual and imminent" injury.  *See Summers*, 555 U.S. at

---

[1] At this point, Federal Defendants do not dispute that Plaintiff may have a protected interest that could give rise to standing.  This concession assumes that the second declaration is recognized by the Court.  However, if the Court determines that the second declaration is untimely, then Federal Defendants continue to assert that Ms. Boggs's generalized assertions regarding her interests in the gray wolf found in the first declaration are too vague to satisfy the injury in fact prong, which, at the summary judgment stage, requires a plaintiff to set forth "specific facts."  *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561 (1992).

FEDERAL DEFENDANTS' REPLY IN SUPPORT OF CROSS-MOTION FOR SUMMARY JUDGMENT

*Conservation Cong. v. U.S. Forest Serv.*, 2:16-CV-00864-MCE-AC                    3

499 ("Standing . . . 'is not an ingenious academic exercise in the conceivable . . . but requires . . . a factual showing of perceptible harm.'" (alterations in the original)).

*Clapper v. Amnesty International USA*, 568 U.S. 398 (2013), in which the Supreme Court rejected a standing theory with a similarly speculative injury, is instructive.  There, Plaintiffs challenged the Foreign Intelligence Surveillance Act (FISA) Amendments Act of 2008 on constitutional grounds, and alleged that there was an "objectively reasonable likelihood" that their private communications with foreign contacts would be intercepted under the 2008 Amendment to FISA, thus causing them injury.  *Id.* at 410.  The Supreme Court rejected this standing theory, explaining that it relied on "highly speculative fear" and on a "highly attenuated chain of possibilities" and, as such, did not "satisfy the requirement that threatened injury must be certainly impending."  *Id.*

Plaintiff here similarly alleges an injury to wolves that is impermissibly based on a highly attenuated chain of possibilities.  First, Plaintiff speculates that gray wolves, which have never been detected in the Project area, will venture into the Project area.  As noted, there is not a scintilla of evidence that a wolf has ever been in the Project area.  Next, Plaintiff worries that a wolf, if it did venture into the area, will be harmed by the Project.  This link is particularly weakened by the fact that some of the references relied upon by Plaintiff for this alleged harm are for other subspecies of wolf, or are associated with other Forest Service projects, which are not relevant considerations in the current case.  *See* ECF No. 58 at 6 (noting that one of the stressors for the Alexander Archipelago wolf, found in Alaska and coastal British Columbia, is timber harvest); ECF No. 58 at 43-72 (describing the Big Thorne Project, located on Prince of Wales Island, Alaska, and its impacts on the Alexander Archipelago wolf).  Plaintiff's "speculative chain of possibilities" and "hypothetical future harm" cannot satisfy the injury in

fact prong of standing.  *Clapper*, 568 U.S. at 414-16; *see also Susan B. Anthony List v. Driehaus*, 134 S. Ct. 2334, 2341 (2014) ("An allegation of future injury may suffice if the threatened injury is 'certainly impending,' or there is a 'substantial risk' that the harm will occur." (citation omitted)).

Plaintiff's arguments otherwise find no legal basis.  First, Plaintiff asserts that Ms. Boggs is "concerned that logging activities will have adverse effects on . . . species that I am working to protect, including gray wolves."  ECF No. 57 at 8-9.  But Plaintiff must show that the actions proposed by the Project pose a "substantial risk" to Plaintiff's alleged interests, *see Susan B. Anthony List*, 135 S. Ct. at 2341, and Plaintiff's speculative "concern" is insufficient to satisfy this requirement.  Plaintiff also contends that "the challenged activity may be causing a take of the species[.]"  ECF No. 57 at 7 n.3.  This contention is similarly based on a speculative concern and should be rejected.  Indeed, beyond making this off-hand contention in a footnote, Plaintiff has proffered no evidence that the challenged activity is causing a "take" of gray wolf.  *See* 16 U.S.C. § 1532(19).

Second, Plaintiff asserts that "if the gray wolf 'may be present' then the failure to analyze the effects to the endangered species clearly results in a threat to that species from logging activities."  ECF No. 57 at 10.  But Plaintiff's assertion here is inconsistent with the causation requirement for standing.  Even if Plaintiff could demonstrate that the procedures set forth in ESA Section 7 were designed to protect the type of concrete interest asserted, Plaintiff has failed to "establish 'the reasonable probability' of the challenged action's threat to [its] concrete interest."  *Hall v. Norton*, 266 F.3d 969, 977 (9th Cir. 2001) (citation omitted).  Instead, Plaintiff's claim of injury relies on "conjecture about the behavior of other parties," *id.* (citation omitted)*,* as there is no evidence that the Lava Project will affect gray wolves or their habitat.

FEDERAL DEFENDANTS' REPLY IN SUPPORT OF CROSS-MOTION FOR SUMMARY JUDGMENT
*Conservation Cong. v. U.S. Forest Serv.*, 2:16-CV-00864-MCE-AC                                        5

Third, Plaintiff contends that, under Federal Defendants' theory of standing, no party could ever have standing under the "may be present" standard, thus rendering that provision of the ESA and its protections meaningless.  ECF No. 57 at 6 n.1.  This argument fails at the outset, however, because the functioning of the ESA, including the obligation of an agency to prepare a BA, does not depend on the standing of a future plaintiff.  To the contrary, federal agencies must comply with the ESA regardless of the potential for litigation.  Additionally, Plaintiff's characterization of the "may be present" standard overlooks that the standard includes a full spectrum of possible factual circumstances, from a scenario where a protected species could hypothetically be present in the action area, to a scenario where a protected species definitively inhabits the action area, to many other scenarios in between.  However, in all of these scenarios, it is <u>always</u> the plaintiff's burden to establish that there is a substantial risk of concrete harm to its interests in the species that "may be present" in the action area.  Here, Plaintiff has failed to meet this burden because there are no facts to elevate Plaintiff's alleged injury from hypothetical to actual and imminent.  For these reasons, Plaintiff lacks standing to assert the gray wolf claim.[2]

**B.      Federal Defendants are entitled to summary judgment on the ESA claims.**

Focusing exclusively on the gray wolf ESA claims, Plaintiff continues to assert that the Forest Service's "no effect" determination was arbitrary and capricious and that the Forest Service failed to reinitiate consultation regarding the effects of the Lava Project on the

---

[2] Relatedly, Federal Defendants continue to object to paragraphs 10-13 of Ms. Boggs's first standing declaration (ECF No. 47), and raise new objections to the exhibits attached to Ms. Boggs's second standing declaration (ECF No. 58).  As explained in our opening brief, these paragraphs, and now the exhibits, present extra-record scientific opinion and cannot be considered as part of the record.  *See Ctr. for Biological Diversity v. U.S. Fish & Wildlife Serv.*, 450 F.3d 930, 943 (9th Cir. 2006); *Conservation Cong. v. U.S. Forest Serv.*, 235 F. Supp. 3d 1189, 1199-1200 (E.D. Cal. 2017), appeal docketed, 17-16153 (9th Cir. 2017).

gray wolf.  As in its motion for summary judgment, Plaintiff's arguments in reply are not

grounded in the legal framework of the ESA and therefore must fail.

### 1. The Forest Service complied with the procedural requirements of ESA Section 7.

Under ESA Section 7, an action agency, like the Forest Service here, first inquires with

the U.S. Fish and Wildlife Service (FWS) whether any listed or proposed-to-be-listed species

"may be present" in the area of the proposed action.  16 U.S.C. § 1536(c)(1); *All. for Wild*

*Rockies v. Kruger*, 950 F. Supp. 2d 1172, 1179 (D. Mont. 2013) ("The Forest Service's first step

in complying with section 7 is to obtain from the Wildlife Service 'a list of any listed or

proposed species or designated or proposed critical habitat that *may be present* in the action

area.'").  If the answer to this question is affirmative, the action agency may prepare a biological

assessment to determine whether the identified species "is likely to be affected by such action."

16 U.S.C. § 1536(c)(1); 50 C.F.R. 402.12(b); *Kruger*, 950 F. Supp. 2d at 1179 (explaining that,

once it is determined that a listed species may be present, the action agency completes a

"biological assessment to determine if the proposed action 'may affect' or is 'likely to adversely

affect' the listed species" (citations omitted)).  If the action agency determines that the action

will have "no effect" on listed species or critical habitat, the agency has no further obligations

under the ESA.  *Pac. Rivers Council v. Thomas*, 30 F.3d 1050, 1054 n.8 (9th Cir. 1994); *Protect*

*our Water v. Flowers*, 377 F. Supp. 2d 844, 871 (E.D. Cal. 2004) ("[I]f the agency determines

that a particular action will have no effect on an endangered or threatened species, the formal

consultation requirements are not triggered.").  However, if the action may affect listed species

or critical habitat, the agencies proceed through Section 7 consultation.[3]  *Kruger*, 950 F. Supp.

---

[3] Specifically, if the proposed action is not likely to adversely affect listed species, then informal consultation is undertaken, whereas if the action is likely to adversely affect listed species, the

2d at 1179 ("A determination by the Forest Service in a biological assessment that an action 'may affect' a listed species or critical habitat gives rise to a consultation requirement under section 7 of the ESA.").

As explained in Federal Defendants' opening brief, the Forest Service complied with this process in determining that the Project would not affect the gray wolf or its habitat.  ECF No. 52; FS_488.  On June 25, 2013, the Forest Service obtained a list of endangered, threatened, or proposed species that "may be present" in the vicinity of the Project from FWS.  FS_488.  This list of twelve species included the gray wolf and the northern spotted owl.  FS_488-89.  After receiving this list, the Forest Service prepared a BA to determine whether any of the identified species were likely to be affected by the proposed action.  *Id.*  The Forest Service concluded that the Project would have no effect on the gray wolf because, as set forth below, gray wolves had never been detected in the Project area and the <u>only</u> gray wolf detected in Northern California at the time the BA was prepared had since returned to Oregon and was nowhere in the vicinity of the project.  FS_488.   Accordingly, the Forest Service had no further obligations under the ESA as to that species.  *See Sw. Ctr. for Biological Diversity v. U.S. Forest Serv.*, 100 F.3d 1443, 1447 (9th Cir. 1996) (determining that the Forest Service's "no effect" finding "obviates the need for formal consultation under the ESA").

Plaintiff's continued assertions that the Forest Service flouted the requirements of Section 7 with respect to the gray wolf are based on a misunderstanding of the law and should be rejected.  In its reply, Plaintiff relies almost exclusively on *Kruger* for its argument that Federal Defendants did not comply with the procedural requirements of ESA Section 7.  *See* ECF No. 57

---

agencies proceed through formal consultation.  50 C.F.R. §§ 402.13, 402.14; *Kruger*, 950 F. Supp. 2d at 1179.

FEDERAL DEFENDANTS' REPLY IN SUPPORT OF CROSS-MOTION FOR SUMMARY JUDGMENT

*Conservation Cong. v. U.S. Forest Serv.*, 2:16-CV-00864-MCE-AC                                      8

at 14-15 & 18-19.  But, as outlined above, *Kruger* sets out the Section 7 procedural requirements in a step-by-step fashion, and the record in this case demonstrates that the Forest Service followed these steps in reaching its "no effect" determination for the gray wolf.  Additionally, despite Plaintiff's insistence otherwise, the Forest Service here did not make the mistakes that *Kruger* highlights.  Thus, *Kruger* supports the conclusion that the Forest Service complied with ESA Section 7 in this case.

Plaintiffs in *Kruger* challenged the Forest Service's Cabin Gulch Project on the Helena National Forest, alleging violations of the ESA for failure to complete consultation for grizzly bears and lynx.  950 F. Supp. 2d at 1175-76.  Significantly, the Forest Service did not complete a BA for the species because both the Forest Service and FWS determined that grizzly bears and lynx were not species that "may be present" in the action area.  *Id.* at 1176.  As to the grizzly bear claim, the district court upheld the Federal Defendants' determination, noting that plaintiffs' evidence boiled down to reported but unconfirmed sightings of grizzly bears from an unknown time outside of the project area, and concluding that this evidence was insufficient to prove that the Forest Service's conclusion was in clear error.  *Id.* at 1181.  With respect to the lynx claim, however, the district court concluded that the evidence submitted by plaintiffs raised the possibility that lynx may be present in the project area, and that the Federal Defendants acted arbitrarily and capriciously in determining otherwise.  *Id.* at 1182-84.  The district court further determined that the "may be present" standard does not require the species to actually occupy the area and that the "the question of whether lynx 'may be present' in an area is less rigorous than the question of whether lynx 'occupy' an area."  *Id.* at 1184.

Plaintiff contends that the "only difference between the case at hand and *Kruger* is that in *Kruger* the agency was more explicit about using an 'occupancy' standard, whereas here the

FEDERAL DEFENDANTS' REPLY IN SUPPORT OF CROSS-MOTION FOR SUMMARY JUDGMENT

*Conservation Cong. v. U.S. Forest Serv.*, 2:16-CV-00864-MCE-AC                                    9

agency's rationale is more subtle and implicit."  ECF No. 57 at 15.  In truth, there are a host of

material differences between the cases.  Most importantly, *Kruger* held that the federal agencies

acted arbitrarily and capriciously by not acknowledging that lynx "may be present" in the action

area.  950 F. Supp. 2d at 1184.  This fatal flaw, which occurred during the first step of the

Section 7 consultation process, is absent here.  In fact, the record demonstrates that the Forest

Service underlined that the gray wolf, along with eleven other endangered, threatened, or

proposed species, "may be present" in the Project area.  FS_488-89.  Critically, unlike in *Kruger*,

the Forest Service completed a BA that included the twelve species that "may be present" in the

Project area, including the gray wolf, and ultimately determined that the proposed action would

affect only one of those species, the northern spotted owl.  *Id.*  Therefore, contrary to Plaintiff's

assertions, nothing in *Kruger* undermines the Forest Service's actions here.

The Forest Service's actions are also supported by the Ninth Circuit's decision in

*Southwest Center for Biological Diversity v. U.S. Forest Service*, 100 F.3d 1443.  In that case,

the Forest Service concluded in its BA that a proposed salvage timber sale would have "no

effect" on any threatened or endangered species that may be present in the project area, including

the Mexican Spotted Owl.  *Id.* at 1446.  The Forest Service explained that the project would not

affect the owl because the salvage area "provides neither foraging nor nesting habitat."  *Id.*

Notably, the district court upheld the Forest Service's "no effect" conclusion despite FWS's

internal memorandum concluding that the project might affect the owl because it was located

near a protected owl activity center and contained owl habitat.  *Id.*  On appeal, the Ninth Circuit

affirmed, explaining that the Forest Service followed the procedural requirements of Section 7 in

making its determination:

> The ESA requires agencies to consult with the Fish and Wildlife Service
> whenever their actions 'may affect listed species or critical habitat'. . . . Here,

FEDERAL DEFENDANTS' REPLY IN SUPPORT OF CROSS-MOTION FOR SUMMARY JUDGMENT

*Conservation Cong. v. U.S. Forest Serv.*, 2:16-CV-00864-MCE-AC                    10

> however, the Forest Service made an initial determination that the Rustler Sale
> would have no effect on the Mexican Spotted Owl.  That finding obviates the
> need for formal consultation under the ESA.

*Id.* at 1447 (emphasis added, citation omitted).  Significantly, the Ninth Circuit upheld the Forest Service's "no effect" determination despite noted "gaps and imperfections in the Forest Service's analysis," explaining that an agency's decision may only be called arbitrary and capricious in limited circumstances.  *Id.* at 1448.

The facts in the current case closely mirror those of *Southwest Center*, except for an important distinction.   In both cases, the Forest Service identified endangered, threatened, or proposed species that "may be present" in the Project area, and included those species in its BA. FS_488-89 (identifying twelve species, plus critical habitat, that "may be present" within the Project area); *Sw. Ctr.*, 100 F.3d at 1446 (including the Mexican Spotted Owl in the BA due to its presence in the project area).  In both cases, the Forest Service ultimately determined that the species at issue would not be affected by the proposed action, and offered a reasoned explanation for this conclusion.  FS_488 (concluding that the Project would not affect gray wolves because the only detected wolf in California at the time  was never detected in the Project area and was not expected to be impacted by the Project because of its transience); *Sw. Ctr.*, 100 F. 3d at 1446 (concluding that the salvage sale would not affect owls because the area "provides neither foraging nor nesting habitat").

The critical distinction between the two cases is that, unlike here, in *Southwest Center*, FWS did not agree with the Forest Service's "no effect" determination, noting that there was a protected owl activity center within one mile of the project and owl habitat within the project area.  *Sw. Ctr.*, 100 F.3d at 1446.  Despite the noted tension between the federal agencies on this issue, the district court and Ninth Circuit upheld the Forest Service's "no effect" determination.

*Id.* at 1449.  Here, there is no such disagreement between the Forest Service and FWS as to the effects of the Project on the gray wolf.  Accordingly, the Forest Service's "no effect" determination in the current case has more support than the "no effect" determination upheld by the Ninth Circuit in *Southwest Center* and should likewise be upheld by this Court.[4]

For these reasons and those articulated in Federal Defendants' cross-motion for summary judgment, Plaintiff's assertion that the Forest Service did not comply with the procedural requirements of ESA Section 7 is misplaced.

> ### 2.  Plaintiff has failed to show that the Forest Service's "no effect" determination was unlawful.

The Forest Service's "no effect" determination "must be upheld unless arbitrary and capricious."  *W. Watersheds Project v. Kraayenbrink*, 632 F.3d 472, 481 (9th Cir. 2011).  In reviewing a "no effect" determination, a court must decide whether the agency "considered the relevant factors and articulated a rational connection between the facts found and the choice made."  *Id.* at 496 (citation omitted).

The BA demonstrates that the Forest Service considered these factors and reasonably concluded that the Project would have "no effect" on the gray wolf.  More specifically, at the time the Forest Service completed the BA, the relevant facts regarding the gray wolf were: 1)

---

[4] Plaintiff attempts to distinguish the cases, contending that, in *Southwest Center*, the "Forest Service's 'no effect' determination was a product of its actual analysis in the biological assessment," whereas in the current case, the Forest Service did not analyze the effects of the Project on the gray wolf in the BA.  ECF No. 57 at 19.  It is unclear how Plaintiff arrives at this distinction, however, because the only "analysis" provided in *Southwest Center* for the Forest Service's "no effect" determination was a one-sentence statement that the project area "provides neither foraging nor nesting habitat" for the owl.  *Sw. Ctr.*, 100 F.3d at 1446.  In contrast, here, the Forest Service provided a paragraph, albeit brief, in the BA explaining the "no effect" determination for the gray wolf.  FS_488.

only a single documented gray wolf (OR-7) was detected in the entirety of Northern California,[5] FS_488; 2) OR-7 was transient at that time, meaning that it was traveling, or passing through, FS_488; 3) OR-7 left California in 2013 and became a member of a pack in Oregon, FS_287; and 4) OR-7 was never detected in the Project area, FS_488; FS_287.

Plaintiff makes several arguments targeting the reasonableness of the Forest Service's determination, but none are tenable.  First, Plaintiff mistakenly asserts that the Forest Service's characterization of OR-7 as "transient" is "simply another way of saying that the gray wolf 'may be present' in the Project area."  ECF No. 57 at 13.  But "transient" does not equate to "may be present."  The first is a term used by wildlife biologists in preparation of the BA to convey that all evidence indicated that OR-7 was on the move, beyond the project area.  FS_488; *see also Transient*, Webster's Third New International Dictionary (2002) (defining transient as "passing through or by a place with only a brief stay or sojourn").  In contrast, "may be present" is a legal standard under the ESA that can trigger the preparation of a BA to determine if the identified species "is likely to be affected by such action."  16 U.S.C. § 1536(c)(1).  Here, the Forest Service did not dismiss the gray wolf from the BA because it "may be present," as Plaintiff contends.  ECF No. 57 at 15.   Instead, the Forest Service acknowledged that the gray wolf "may be present" in the Project area, and included the species in the BA pursuant to Section 7 of the ESA.  The Forest Service ultimately concluded, however, that the Project would have no effect

---

[5] Plaintiff takes this fact out of context to suggest that Federal Defendants in their cross-motion for summary judgment were straying from the evidence in alleging that "the only wolf detected in California left the state four years ago and is currently a member of a pack in Oregon."  ECF No. 57 at 21 (quoting ECF No. 52-1 at 18).  Plaintiff contends that it is "simply impossible to square this allegation with the evidence before this Court," and recites more recent wolf detections in California to dispute Federal Defendants' allegation.  *Id.*  However, Federal Defendants' "allegation" referred to wolf detections at the time the BA was completed, and did not purport to characterize all of the wolf detections since then.

on the gray wolf because 1) no wolves had been detected in the Project area, and 2) the only wolf detected near the Project area (dubbed OR-7) was transient, or passing through California, and not expected to enter the Project area.  FS_488.  In other words, while there was enough evidence of gray wolf presence in California to surmount the low "may be present" bar, there was not enough evidence of gray wolf presence to reasonably conclude that the Project would affect the species.

Relatedly, Plaintiff hones in on an element of gray wolf transience – that the species can disperse up to 600 miles – and argues that Federal Defendants' reliance on this fact in their cross-motion for summary judgment "cloud[s] the issue."  ECF No. 57 at 17.  Contrary to Plaintiff's assertions, Federal Defendants do not contend that a highly transitory or migratory species should be excluded from the "may be present" list because the species has the capability of traveling great distances.  Instead, Federal Defendants merely assert that Plaintiff is wrong to suggest that if a species is capable of traveling great distances – like dispersing wolves or migratory birds – an action agency is necessarily required to conclude that any proposed project within that broad dispersal or migratory range may affect the species.  Instead, what is required of an action agency is to acknowledge when a species "may be present" in the action area, and evaluate the evidence to reasonably determine possible impacts of the proposed project on the identified species.  Here, the Forest Service complied with these requirements.

**3.   The Forest Service had no obligation to consult on the effects of the Project on the gray wolf.**

The Ninth Circuit has stated that when an agency determines that an action will have no effect on a listed species, the consultation requirements of the ESA are not triggered.  *Pac. Rivers Council*, 30 F.3d at 1054 n.8; *Friends of the River v. U.S. Army Corps of Eng'rs*, 870 F. Supp. 2d 966, 971-72 (E.D. Cal. 2012) ("If the agency determines that a particular action will

FEDERAL DEFENDANTS' REPLY IN SUPPORT OF CROSS-MOTION FOR SUMMARY JUDGMENT
*Conservation Cong. v. U.S. Forest Serv.*, 2:16-CV-00864-MCE-AC                14

have 'no effect' on a listed species or critical habitat, there is no consultation requirement." (citations omitted)); *Coal. for a Sustainable Delta v. FEMA*, 812 F. Supp. 2d 1089, 1106 (E.D. Cal. 2011) ("[W]here the action will not affect the listed species at all, the consultation duty is not triggered.").

Here, the Forest Service reasonably determined that the Project would have no effect on the gray wolf, FS_488, and was thus not obligated to consult with FWS on this species.  Then, when presented with new evidence of gray wolf detections in California, the Forest Service considered this new information and again reasonably concluded in an internal memo (Wolf Memo) that it did not reveal effects of the Project on the gray wolf in a manner not previously considered.  FS_285; FS_286.  In other words, through the Wolf Memo, the Forest Service determined (for a second time) and re-articulated that the Project would have no effect on the gray wolf.  Accordingly, the consultation requirements were never triggered.

In an apparent attempt to undermine the agency's determinations, Plaintiff argues that the Wolf Memo is not a consultation document and is not presented as an amendment to the Forest Service's BA.  ECF No. 57 at 25 n.11.  But Plaintiff provides <u>no</u> legal support for its suggestion that the Forest Service was required to produce a consultation document or present the Wolf Memo as an amendment to the BA.[6]  Moreover, the Forest Service never held this document out

---

[6] In another section of their reply, Plaintiff references *Conservation Congress v. U.S. Forest Service*, No. 2:15-00249 WBS AC, 2016 WL 3126116, at *1 (E.D. Cal. June 2, 2016), and asserts that the Forest Service in that case submitted an addendum to the BA in which it concluded that the project "may affect, but is not likely to adversely affect" the gray wolf. However, in that case, new information revealed effects of the Project on the gray wolf not previously considered.  For example, after the completion of the BA, California Fish and Wildlife confirmed the presence of what was later designated as the "Shasta Pack" in the forest (Shasta-Trinity National Forest) where the project was located.  *Id.* at *1, 2.  This prompted the Forest Service to initiate consultation and prepare an addendum to their BA.  *Id.* at *3. Significantly, this case does not stand for the proposition that an action agency is <u>required</u> under the ESA to submit an addendum to a BA whenever new information about a species is revealed.

FEDERAL DEFENDANTS' REPLY IN SUPPORT OF CROSS-MOTION FOR SUMMARY JUDGMENT

*Conservation Cong. v. U.S. Forest Serv.*, 2:16-CV-00864-MCE-AC                    15

as a consultation document.  Instead, the Wolf Memo simply memorializes the Forest Service's internal consideration of recent gray wolf activity in California, and is evidence of the Forest Service's continued evaluation of a constantly evolving issue.

And, in fact, the Wolf Memo's summary of recent wolf activity reveals that the Forest Service properly determined that the new information did not reveal effects of the Project on the gray wolf in a manner that the Forest Service had not previously considered.  Most importantly, there was <u>no</u> new information demonstrating that gray wolves were or had been present in the Project area.  FS_286-88.  Plaintiff's recital of the recent wolf sightings does not detract from this core fact.  For instance, Plaintiff asserts, by citing an exhibit not properly in the record and in dispute,[7] that OR-25 has made multiple dispersals from Oregon and into California.  ECF No. 57 at 25-26 (citing Exhibit J at 3).  However, this exhibit also notes that OR-25 is GPS-collared, and therefore can be tracked, and that OR-25 has returned to Oregon.  Exhibit J at 3.

Next, Plaintiff asserts that, because members of the Shasta Pack are not GPS-collared and are "near" the Project area, the Forest Service's determination that the pack is not in the Modoc National Forest "lacks certainty."  ECF No. 57 at 26.  While it is true that members of the Shasta Pack are not GPS-collared, California Department of Fish and Wildlife continues to track Shasta Pack members "using trail cameras and by plane."  FS_286.  Furthermore, Plaintiff's assertion that the Project area is "within the home range of the Shasta Pack and likely the Lassen Pack," ECF No. 57 at 27, is simply inaccurate.  Research suggests that pack members are not likely to travel far for life functions, and that "restricting human activity within a 2.4 km (1.5 miles)

---

[7] Federal Defendants rely on their arguments presented in their response to Plaintiff's request for judicial notice (ECF No. 53) for the contention that the Court should not take judicial notice of Exhibit J.

FEDERAL DEFENDANTS' REPLY IN SUPPORT OF CROSS-MOTION FOR SUMMARY JUDGMENT

*Conservation Cong. v. U.S. Forest Serv.*, 2:16-CV-00864-MCE-AC                16

radius of homesites is a sufficient minimum to adequately protect wolves."  FS_287 (citing

studies on human disturbances, including timber harvest, on wolves).  Here, the best evidence

indicates that the Shasta Pack is located approximately twenty to thirty miles west of the Modoc

National Forest, FS_286-87, and that the Lassen Pack is located more than twenty miles from the

Modoc National Forest boundary, FS_287.[8]  Significantly, members of both packs have never

been detected within the Modoc National Forest boundary.  FS_287.

Finally, Plaintiff asserts that all of these recent wolf sightings show that "wolves are

circling and clearly dispersing through the Modoc National Forest and within close proximity to

the Project area."  ECF No. 57 at 27.  But this assertion mischaracterizes the evidence.  While

there have been recent wolf sightings in California, none have occurred in or "within close

proximity" to the Project area.  In fact, the Forest Service noted an "absence of any sightings,

scat, tracks, GPS or radio-tracking data in or near the project area."  FS_288.  And, even

assuming that gray wolves are present in the Project area – which, as explained throughout this

reply, is an assumption not supported by the evidence – the Forest Service reasonably concluded

that the vegetation management activities proposed by the Project would not degrade or destroy

wolf habitat.  FS_288 ("[E]ven if a wolf wandered into the Project Area at some future time,

habitat quality would not be altered by project activities.").[9]

---

[8] As noted in the Wolf Memo, the Lassen County line is approximately twenty miles from the
Project area.  FS_287.  The Lassen Pack is probably farther than twenty miles from the Project
area because the members have been detected in the western portions of Lassen County.  FS_287
n.3; Exhibit J at 1.
[9]  The Forest Service concedes that salvage of dead trees is not a part of the Lava Project and that
the salvage reference was mistakenly included in the Wolf Memo.  FS_288.  But this mistake
does not affect the outcome of the Forest Service's analysis, as the Wolf Memo previously noted
that the Lava Project vegetation management activities would not degrade or destroy any wolf
habitat.  *Id.*

Thus, the record demonstrates that the Forest Service considered the recent gray wolf sightings and reasonably affirmed its earlier determination – that the Project would have no effect on the species.   Accordingly, the Forest Service satisfied its obligations under the ESA with respect to the gray wolf.

### 4. FWS reasonably concluded that the effects of the Lava Project would not result in the destruction or adverse modification of NSO critical habitat.

Because Plaintiff does not address Federal Defendants' counter-arguments regarding the NSO critical habitat (ECF No. 57 at 28-29), Federal Defendants rely on their arguments presented in their cross-motion for summary judgment as to this claim, (ECF No. 52 at 36-39). Specifically, Federal Defendants reiterate that FWS's consideration of the impacts of the Lava Project on the NSO critical habitat was reasonable and supported by the record, and is thus entitled to deference. *Trout Unlimited v. Lohn*, 559 F.3d 946, 959 (9th Cir. 2009).  This is especially true when, as here, Plaintiff does not cite to any issue with FWS's NSO critical habitat analysis but instead mistakenly relies on FWS's jeopardy analysis to support its argument. Given that Plaintiff's NSO critical habitat arguments find no support in the record, and that the record instead demonstrates that FWS reasonably concluded that the Project would not result in the destruction or adverse modification of NSO critical habitat, Plaintiff's argument here fails.

### C. Federal Defendants are entitled to summary judgment on the NEPA claims.

Plaintiff's reply makes no attempt to rebut Federal Defendants' NEPA arguments.  ECF No. 57 at 29.  As discussed in Federal Defendants' opening brief, the administrative record shows, and the Forest Service reasonably concluded, that:  (1) the Lava Project will not significantly impact the NSO; (2) the effects of the Lava Project are not highly controversial; and (3) the effects of the Lava Project are not scientifically uncertain.  ECF No. 52-1 at 38-43. Likewise, the Environmental Assessment  contains an adequate discussion of alternatives, and

Plaintiff's arguments to the contrary are either waived or without merit.  *Id.* at 43-47.  For these reasons, and for the reasons discussed in Federal Defendants' opening brief, this Court should deny Plaintiff's motion for summary judgment and grant Federal Defendants' cross-motion for summary judgment on Plaintiff's NEPA claims.

### D.      Plaintiff is not entitled to injunctive relief.

"An injunction is a drastic and extraordinary remedy, which should not be granted as a matter of course."  *Monsanto Co. v. Geertson Seed Farms*, 561 U.S. 139, 165 (2010); *Weinberger v. Romero-Barcelo*, 456 U.S. 305, 312 (1982).  To obtain an injunction, a plaintiff must prove: "(1) that it has suffered an irreparable injury; (2) that remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) that, considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4) that the public interest would not be disserved by a permanent injunction."  *eBay Inc. v. MercExchange, LLC*, 547 U.S. 388, 391 (2006).  The four-factor test applies with equal force when a plaintiff alleges an environmental injury or a violation of NEPA or the ESA.  *Monsanto*, 561 U.S. at 157.

Plaintiff's claim for injunctive relief should be denied because Plaintiff failed to carry its burden.  *Pac. Rivers Council v. U.S. Forest Serv.*, 942 F. Supp. 2d 1014, 1025 (E.D. Cal. 2013) (noting that Plaintiff bears the burden of demonstrating the four injunction standards).  In fact, Plaintiff, other than styling its complaint as a "Complaint for Declaratory and Injunctive Relief," does not mention again the remedy it seeks in either its complaint, motion for summary judgment, or reply, and does not provide any evidence demonstrating that it carries this heavy burden.  To the contrary, enjoining the Project would harm the public's interest in: (1) reducing the risk of catastrophic wildfire, (2) restoring habitat for the owl, and (3) contributing to a

sustainable supply of timber.  Even if implementing the Project would harm Plaintiff – which Plaintiff has not demonstrated here – the degree of such harm is minimal and the balance of equities tip sharply against the issuance of an injunction.

To the extent the Court identifies any shortcomings in Federal Defendants' compliance with NEPA or the ESA, and we submit there are no such infirmities, the appropriate course would be to remand the matter to the agencies to fix any errors, but allow the Project to proceed during remand.  Should the Court wish to consider whether some form of injunctive relief is appropriate, Federal Defendants would respectfully request the Court give the parties further opportunity to address the scope of relief.  *See Nat. Res. Def. Council v. Kempthorne*, 506 F. Supp. 2d 322, 388 (E.D. Cal. 2007) (ordering supplemental briefing on the appropriate remedy and noting that "it is not prudent to impose a remedy without further input from the parties"). However, given that Federal Defendants' decisions are sound and well-supported by the record, no relief is necessary or appropriate.

## III.        CONCLUSION

For the foregoing reasons, the Court should deny Plaintiff's motion for summary judgment and grant Federal Defendants' cross-motion for summary judgment.


DATED: March 2nd, 2018



                                          Respectfully Submitted,


                                          JEFFREY H. WOOD,
                                          Acting Assistant Attorney General
                                          SETH M. BARSKY, Chief
                                          S. JAY GOVINDAN,
                                          Assistant Section Chief

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

*/s/ Sarah J. Sheffield*
SARAH J. SHEFFIELD
Trial Attorney
United States Department of Justice
Environment & Natural Resources Division
Wildlife & Marine Resources Section
Ben Franklin Station
P.O. Box 7611
Washington, DC 20044-7611
Tel: (202) 305-0211
Fax: (202) 305-0275
E-mail: sarah.sheffield@usdoj.gov

SHAUN M. PETTIGREW
Trial Attorney
Natural Resources Section
P.O. Box 7611
Washington, D.C. 20044-7611
Tel: (202) 305-3895 (Pettigrew)
Fax:  (202) 305-0506
shaun.pettigrew@usdoj.gov

*Attorneys for the Federal Defendant*

FEDERAL DEFENDANTS' REPLY IN SUPPORT OF CROSS-MOTION FOR SUMMARY JUDGMENT

*Conservation Cong. v. U.S. Forest Serv.*, 2:16-CV-00864-MCE-AC

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on March 2, 2018, I filed the foregoing document electronically through the CM/ECF system, which caused all parties or counsel of record to be served by electronic means, as more fully reflected on the Notice of Electronic Filing.

/s/ *Sarah J. Sheffield*
Sarah J. Sheffield
U.S. Department of Justice